## SARAH FROST *versus* NOAH SPAULDING.

In a deed of conveyance of woodland, the boundary line was described as running, "northerly to land of M., thence southeasterly by M.'s land, thirty-eight rods and one half, to a stump and stones "; and immediately after the conveyance the parties went upon the land and a monument was pointed out as being at the northwesterly corner, and a stump and stones as at the northeasterly corner, and the length of the line between them was exactly thirty-eight rods and a half; but a gore of land intervened between this line and the land of M. It was *held*, that the monuments were to govern, and therefore that the gore did not pass by the deed.

TRESPASS *quare clausum fregit.* Trial before *Putnam J.,* upon the general issue.

Solomon Frost died in 1800, intestate, seised of a farm situate in Groton. He left two sons, Solomon and Levi, who were his heirs. In 1823 Solomon, the younger, gave a deed to Levi, in which, after a description of the premises conveyed, by metes and bounds, was this clause : " meaning hereby to convey all the real estate that I was heir to from my father." The plaintiff claimed the *locus in quo* as a part of the Frost farm which had not been sold by the administrator of Solomon the elder, and derived her title from Levi. The *locus* was the gore A B C on the following plan :

In 1803 the administrator of Solomon, the elder, made a deed to Samuel Morse, from whom the defendant derived his title, of " a certain parcel of land, lying in the southerly part of Groton aforesaid, containing ten acres of woodland, be the

38

same more or less, bounded thus, viz. beginning at a stake and stones on the line of widow Sarah Frost's dower or thirds, thence northerly by said thirds to black oak tree marked, being the corner of the dower or thirds lately set off to said Sarah, widow of said Solomon ; thence easterly by said thirds to a maple tree marked ; thence northerly by said thirds until it comes to land of Joseph Moor, esquire ; thence southeasterly by said Moor's land, thirty-eight rods and one half, to a stump and stones ; thence southerly by land of Aaron Jewett twenty-nine rods to a stake and stones ; thence westerly to the bound first mentioned."

There was no dispute as to the northwesterly corner bound C, but the question was whether the line of the defendant's land should run from C to A, or from C to B. Either A or B was the northeast corner of the Frost farm. Moor's land adjoined the Frost farm on the north side of the farm. The *locus* was woodland, and no fence had ever been erected from C to A, or from C to B.

Other material facts are stated in the opinion of the Court.

A verdict was taken for the plaintiff by consent, subject &c.

*Farley*, for the plaintiff.

*Hoar*, *Lawrence* and *Joel Adams*, for the defendant.

WILDE J. afterward drew up the opinion of the Court. In the interpretation of deeds and other instruments in writing, courts are bound to effectuate the intention of the parties, if it can be done consistently with the rules of law. When, however, such intention is doubtful, other rules of construction are to be observed, in order to ascertain with reasonable certainty, if it can be done, the true intention of the parties ; one of which rules is, that where in a deed of conveyance the land conveyed is described by reference to monuments, and by courses and distances, which do not correspond with each other, the monuments are to control the courses and distances, they being the surest indication of the intention of the parties as to the extent and limits of the land conveyed. Without some such rule grants might be void for uncertainty ; which are never to be so adjudged, if by any reasonable construction it may be avoided.

Applying these rules of construction to this case, we are of

opinion, that the *locus in quo*, did not pass by the deed of Rufus Frost, the administrator of Solomon Frost, to Samuel Morse, under which the defendant claims title and attempts to justify the supposed trespass. By the first part of the description of the land conveyed by this deed, it is bounded by land set off to Sarah Frost, the widow of Solomon Frost, as her dower or thirds, running thereby several courses up to the land of Joseph Moor. There is no monument referred to in the deed on Moor's line, but it was proved that immediately after the sale of the land by the administrator, the parties went on the premises, and the bounds marked C and B on the plan annexed to the report were pointed out as the northwest and northeast corner of the land conveyed. If these boundaries had been referred to in the deed, there could have been no question that the extent of the grant would be limited by those bounds, although the true dividing line between the Frost's and Moor's lots had been further to the northward.

Where a lot is bounded, in a conveyance, by monuments on a supposed line of an adjoining lot and the monuments do not in fact correspond with the true dividing line, the monuments must govern, as the most certain indication of the intent of the parties. And if the monuments should extend beyond the dividing line, upon an estate not belonging to the grantor, he would be liable on his warranty. This principle is so well established, and so well known, that I apprehend no skilful conveyancer would ever advise a sale by metes and bounds when it was intended that a certain line of another lot should be binding ; especially if that line were uncertain. If the line were to govern, the referring to monuments would be useless, and worse that useless, for the grantor might thereby be deceived as to the extent of the grant.

Now we are of opinion, that this rule of construction is applicable to the present case, for although the monument C on the plan is not referred to in the deed, yet it is proved that it was pointed out as a boundary of the lot conveyed, immediately after the sale ; and the evidence is sufficient to show that it was so considered by the parties. This was proved by a witness called by the defendant, and is pertinent evidence to aid the construction of the grant. *Waterman* v. *Johnson,* 13 Pick.

261. And besides, it was admitted at the trial, that C was the northwest corner of the lot conveyed, and it appeared by the testimony of the surveyor, that this corner boundary was several rods southerly of Moor's line according to the plaintiff's claim, so that running a line from C to A would not correspond with Moor's line, as it was located by the plaintiff's evidence, nor with the line contended for by the defendant, which was from C to B, and there is no evidence of any intermediate line. And besides, the line from C to A is short of the distance as mentioned in the deed ; whereas the line from C to B exactly corresponds with the course and distance mentioned in the deed. This is not, however, very material, for if the boundary C was on the line claimed as Moor's line by the plaintiff, the northerly line of the land conveyed to Morse, from whom the defendant derives his title, must be drawn from C to B, although it would not correspond with Moor's true line, the monument B, which is a stump and stones, being expressly named in the deed. And it is also to be remarked, that if A were to be established as the northeast boundary of the defendant's lot, he would be deprived of a large part of the lot he holds under the title derived from the deed to Morse, at his southeasterly corner. From Moor's line the remaining courses are " southerly by land of Aaron Jewett twenty-nine rods to a stake and stones, thence westerly to the bound first mentioned." No stake and stones have been found to control and extend the length of the line by Jewett's land, and on no principle, or rule of construction, can it be extended beyond the distance named in the deed. The result of such a construction would be to defeat the defendant's title as to a larger gore at the southeast corner of his lot, than the gore now in dispute.

Upon the whole there can be no question as to the extent of the land intended to be conveyed. The description is perfect in every particular, excepting as to that part which bounds upon Moor's line. The parties no doubt supposed that the land conveyed would extend to that line. But this supposition was founded in a mistake. The line was uncertain, and they were informed that it ran from C to B, and the whole description shows that that line was referred to in the deed. The true dividing

line is still undetermined, but the evidence is sufficient to maintain the verdict for the plaintiff on this point of dispute.

As to the defendant's title by possession, it depends on the question, whether the cutting of wood by the defendant and by those under whom he claims, amounts to a disseisin; and this question has been so often decided, that it must be considered as settled and not open to argument.

*Judgment on the verdict.*